# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

v.                                     No.     CV 16-967 JCH/GJF
                                                                   CR 13-3143 JCH

RICHARD A. ARCHULETA,

      Defendant-Movant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before me on Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Doc. 1.[1] The United States has filed a response, Doc. 13, and Defendant has filed a reply. Doc. 16. Having reviewed the briefing and being fully advised, I recommend the Motion be denied because each of its claims falls squarely within the collateral attack waiver in the plea agreement that Defendant knowingly and voluntarily entered into in this case.[2]

### I. Factual and Procedural Background

#### A. *The Crimes and the Charges*

On June 3, 2013, an Albuquerque Police Department (APD) officer stopped a vehicle driven by Defendant for an expired temporary license tag. PSR ¶ 13.[3] The officer arrested Defendant after learning that he was driving on a revoked license. *Id.* An inventory search of the vehicle yielded a loaded .38 caliber handgun, additional ammunition, and four small baggies

---

[1] Unless otherwise identified, all docket citations are to CV 16-967 JCH/GJF.

[2] Before issuing this PFRD, I considered whether an evidentiary hearing was necessary, as instructed by Rule 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. Because the outcome of this Motion turns on matters of law and its disposition requires no further factual development, I concluded that no evidentiary hearing was necessary.

[3] As explained *infra*, there were three PSRs prepared in this case. Unless otherwise identified, all references to the PSR are to its final version, disclosed in August 2015.

containing a substance that field-tested positive for methamphetamine. *Id.* At the time, Defendant had already been convicted of the felony crimes of aggravated battery, attempted kidnaping, false imprisonment, and failure to register as a sex offender. *See* Indictment, Cr. Doc. 2.[4] Consequently, Defendant was charged on September 25, 2013 by a federal grand jury for possessing the firearm and ammunition as a previously-convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id.*

Despite the pending indictment and arrest warrant, Defendant was not arrested for another ten months. On August 7, 2014, APD detectives encountered Defendant at an Albuquerque motel and arrested him. PSR ¶ 17. During a search incident to arrest, detectives discovered that Defendant was carrying a loaded .40 caliber pistol on his hip. *Id.* On October 7, 2014, a superseding indictment charged Defendant with possessing the firearms and ammunition seized on both occasions. Cr. Doc. 18. Count 1 involved the firearm and ammunition seized in June 2013, and Count 2 did the same for those recovered in August 2014. *Id.*

## B. The Form 13 Presentence Report

After the Court permitted Defendant's first counsel to withdraw based on a breakdown in attorney-client communication, a magistrate judge appointed Marc Grano, Esq., to represent Defendant. Cr. Doc. 31. A Form 13 PSR was disclosed to the parties on December 4, 2014 to assist them in understanding Defendant's sentencing exposure for plea negotiation purposes. The pre-plea PSR recommended that Defendant's adjusted offense level should be 30 before taking into account any credit for acceptance of responsibility. *See* Form 13 PSR ¶ 25. This computation began with a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2), in view of Defendant having committed the felon-in-possession offenses after sustaining at least two convictions for felony crimes of violence. *Id.* ¶ 19. The PSR recommended that an additional

---

[4] References to "Cr. Doc. __" are to CR 13-3143 JCH.

two levels be added under § 2K2.1(b)(4)(A), by virtue of the firearm in Defendant's possession in August 2014 having been stolen. *Id.* ¶ 20. The PSR further recommended that an additional four levels be added under § 2K2.1(b)(6)(B) because the Defendant possessed the firearm in June 2013 in connection with the felony methamphetamine evidence found in the same console of the vehicle. *Id.* ¶ 21. The PSR also calculated Defendant to be in Criminal History Category VI. *Id.* ¶ 41. Ultimately, the PSR computed Defendant's guideline sentencing exposure (without contemplating any credit for acceptance of responsibility) as 168-210 months. *Id.* ¶ 51.[5]

### C. The Plea Agreement

Armed with the guidance of the Form 13 PSR, the parties then entered into a written plea agreement. Cr. Doc. 47. In relevant part, the plea agreement required Defendant to plead guilty to Count 1 in exchange for the dismissal of Count 2. In addition, the parties stipulated that Defendant should receive a reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility. Cr. Doc. 47 ¶ 8a. The United States further agreed "to recommend a sentence no greater than ninety-six months (96) months [sic] or eight years imprisonment." *Id.,* ¶ 8c. The parties otherwise reserved their rights to litigate any other aspect of the Defendant's sentence including the applicability of any other sentencing guideline provision. *Id.* ¶ 8d.

Importantly, the agreement featured a section entitled "WAIVER OF APPEAL RIGHTS[,]" which because of its centrality to the outcome of this Motion is worth quoting in full:

> The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a Defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's conviction and any sentence and fine within or below the applicable advisory guideline range as determined by the Court. The Defendant specifically agrees not to appeal the Court's resolution of any contested sentencing factor in

---

[5] I note that a three-level reduction for acceptance of responsibility under § 3E1.1 would have lowered the adjusted offense level to 27, resulting in an adjusted guideline range of 130-162 months.

determining the advisory sentencing guideline range. In other words, the Defendant waives the right to appeal both the Defendant's conviction and the right to appeal any sentence imposed in this case except to the extent, if any, that the Court may depart or vary upward from the advisory sentencing guideline range as determined by the Court. *In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any other extraordinary writ, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver.*

*Id.*, ¶ 13 (emphasis added).

As part of the plea agreement, Defendant also acknowledged that he had "carefully discussed every part of it with [his] attorney." *Id.* 10. He further attested:

I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guideline provisions, and of the consequences of entering into this agreement. No promises or inducements have been given to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

*Id.*

### D. The Change of Plea Hearing

Defendant pleaded guilty pursuant to this agreement on May 20, 2015. *See* Clerk's Mins., Cr. Doc. 48, and Plea Hr'g Tr., Cr. Doc. 66.[6] During the plea colloquy, during which Defendant answered the Court's questions under oath and subject to the penalty of perjury, he admitted that he was 38 years old and had two years of college credits. Plea Hr'g Tr. 3. He denied being under the influence of any drugs or alcohol, or having any condition that interfered with his understanding of the proceedings. *Id.* 3-4. He affirmed that he understood the maximum penalties, *id.* 4, and that the sentencing judge would consult the advisory sentencing guidelines in determining sentence. *Id.* 5. He further acknowledged that "[u]sually, a judge will

---

[6] The transcript also appears as Exhibit 1 to the Government's response to Defendant's § 2255 motion. *See* Doc. 13.

sentence within that applicable range but there are times a judge will go above or below that range and that will be upheld so long as it is a reasonable sentence." *Id.* Defendant admitted that his attorney had shared with him an estimate of the applicable range, but that the estimate could be wrong. *Id.* Defendant understood the parties' stipulation concerning acceptance of responsibility and the Government's agreement to recommend a prison term of 96 months, although neither provision was binding on the sentencing judge. *Id.* 6. He acknowledged that, apart from the parties' single stipulation and the Government's 96-month recommendation, the parties reserved their rights to assert any other position or argument with respect to what the sentence should be. *Id.* 7.

As to the appeal waiver, Defendant affirmed that he understood he was waiving his right to appeal his conviction and sentence, that he had discussed it with his attorney, and that he knew the waiver would be enforced. *Id.* 7-8. Government counsel reiterated his recommendation of a 96-month sentence and specifically alluded to the Form 13 PSR's assessment that the adjusted guideline range exceeded the statutory maximum sentence for a single count of violating 18 U.S.C. § 922(g)(1). *Id.* 9. Ultimately, Defendant acknowledged that he understood every term of his agreement and affirmed that no one had made any different or additional promise besides those contained in the written agreement. *Id.* 9-10. He professed satisfaction with his counsel's advice and representation. *Id.* 12.

After full advisement of his trial rights, *id.* 11-12, and Defendant's confirmation of a factual basis, *id.* 13-14, the court accepted his guilty plea, finding that:

> [Defendant] is fully competent and capable of entering an informed plea. He's aware of the nature of the charge and the consequences of the plea, and this plea of guilty is knowing, it's voluntary and it is supported by an independent basis in fact that contains all of the elements of the offense.

*Id.* 14. The court and counsel then agreed that a traditional PSR would need to be prepared. *Id.*

14-15.

*E. The Two Post-Plea Presentence Reports*

On July 10, 2015, the Probation Office disclosed the PSR. Although it would soon be revised for reasons explained *infra*, this PSR also recommended the same offense level calculations as had the Form 13 PSR, except this time awarding Defendant a three-level reduction for acceptance of responsibility. *See* Original PSR ¶¶ 25-35. Importantly, this PSR also recommended that the offense level be increased a total of six levels for possessing a stolen firearm and possessing a firearm in connection with another felony as had the Form 13 PSR. *Id.* ¶¶ 26-27. An adjusted offense level of 27 and a criminal history category of VI yielded an advisory guideline range of 130-162 months. *Id.* ¶ 83.

In light of the United States Supreme Court's very recent decision in *Johnson v. United States*, 135 S.Ct. 2551 (2015), the Probation Office disclosed a revised PSR on August 17, 2015.[7] Recognizing that Defendant's false imprisonment conviction no longer qualified as a crime of violence under U.S.S.G. § 4B1.2(a), this PSR reduced Defendant's base offense level to 20 pursuant to § 2K2.1(a)(4)(A). PSR ¶ 25. That was the only change in the offense level computation, however, as this version of the PSR continued to recommend the same upward adjustments for possessing a stolen firearm and possessing a firearm in connection with another felony as had the two earlier PSRs. *Id.* ¶¶ 26-27. Giving Defendant credit for acceptance of responsibility, this PSR recommended an adjusted offense level of 23, a criminal history category of VI, and an advisory guideline range of 92-115 months. *Id.* ¶ 83.

The Court originally scheduled the sentencing hearing for August 25, 2015. Cr. Doc. 49. The Court reset the hearing to September 17, 2015, after granting defense counsel's motion for additional time to review the late-disclosed PSR and otherwise prepare for sentencing. *See* Cr.

---

[7] Defendant pleaded guilty on May 20, 2015. The *Johnson* decision was issued five weeks later, on June 26, 2015.

Docs. 50 (motion to continue sentencing) and 51 (order granting same).

### F. The Sentencing Filings and Hearing

Neither party filed objections to the PSR, but both parties filed sentencing memoranda prior to the hearing. The Government informed the Court that, although it had pledged in the plea agreement to recommend a sentence of 96 months, it had no objection to a sentence of 92 months, given that 92 months was the bottom end of the recalculated guideline range. *See* Cr. Doc. 52. For his part, defense counsel filed a 10-page sentencing memorandum in which he requested a downward variance from the advisory guideline range. *See* Cr. Doc. 53. He contended that the combination of Defendant's extraordinary family circumstances, highlighted by his wife's physical and mental conditions, Defendant's own medical condition, and Defendant's employment history should persuade the Court to arrive at a sentence lower than the 92-115 months that the PSR otherwise recommended. *See id., passim.*

At the sentencing hearing, defense counsel confirmed that he had no objections to the PSR. Sntc'g Tr., Cr. Doc. 68, 4.[8] In his oral argument, defense counsel essentially repeated the themes of his sentencing memorandum, offered a mitigating explanation of his client's criminal history, and asked for a sentence beneath the recommended range. *See id.* 5-11, 12-13, 16-18, 21. Again, he made no mention of either of the upward adjustments at issue in the instant § 2255 motion. When it was his turn to speak, Defendant told the Court that he was "well aware of the consequences of the federal court systems *and its sentencing guidelines.*" *Id.* 11 (emphasis added). He went on to say: "And now that I'm aware – *clearly aware* – of the sentencing guidelines, I can say that in the future I will not possess a firearm or ammunition." *Id.* (emphasis added). He concluded by asking the Court to sentence him to "the lowest term of imprisonment possible." *Id.* 12.

---

[8] The transcript also appears as Exhibit 2 to the Government's response to Defendant's § 2255 motion. *See* Doc. 13.

The Court sentenced Defendant to 92 months in prison, the lowest end of the adjusted advisory range. *Id.* 23. The Court also reminded Defendant that he had waived his right to appeal. *Id.* 27. The Court filed its judgment on September 24, 2015. *See* Cr. Doc. 55.

Having waived his right to do so, Defendant did not file a direct appeal. On August 26, 2016, however, he did file the instant § 2255 motion.

## II. Defendant's Claims

In his motion, Defendant asserts four discrete grounds for relief:

1. His counsel was ineffective for failing to investigate the facts and law regarding Defendant's prior convictions and whether he was a career offender, *see* Mot. 4;

2. His counsel was ineffective for refusing to honor Defendant's request to object to ¶ 41 of the PSR because it miscalculated the sentence he served for the DWI conviction referenced therein, resulting in the imposition of three criminal history points instead of two and a criminal history category of VI instead of V, *see* Mot. 5;

3. His counsel was ineffective for refusing to honor Defendant's request to object to the four-level upward adjustment for possessing a firearm in connection with another felony offense, *see* Mot. 6-7; and

4. His counsel was ineffective for refusing to honor Defendant's request to object to the two-level upward adjustment for possessing a stolen firearm, *see* Mot. 8.

For relief, Defendant requests that the PSR be corrected to conform with each of his arguments and that he be re-sentenced to a guideline range that encompasses an adjusted offense level of 17 and an adjusted criminal history category of V. *See* Mot. 12.

## III. Government's Response

The United States asserts that each of Defendant's claims is barred by the waiver of

collateral attack that was contained in paragraph 13 of his plea agreement. *See* Govt. Rsp. to 28 U.S.C. § 2255 Motion ("Govt. Rsp.") 5-9. The United States contends that each claim plainly falls within the scope of the waiver, that both the guilty plea and the waiver itself were knowing and voluntary, and that enforcing the waiver would not constitute a miscarriage of justice. *See id.* The United States further argues that, irrespective of the waiver, Defendant has not established prejudice under the *Strickland* standard because nowhere does he claim that he would have insisted on going to trial but for the alleged errors by his counsel. *See id.* 10-11.

## IV. Defendant's Reply

In his reply brief, Defendant seeks an even lower sentence, all the way down to 33-41 months. *See* Doc. 16 at 13. Although his reply brief consumed 14 pages, Defendant did not address *at all* the Government's position that each of Defendant's claims is barred by the plea agreement's waiver of collateral attack. *See* Def.'s Rply., Doc. 16. Because his reply was utterly silent on this point, I recommend that Defendant be deemed to have conceded that his claims are barred.

Instead, Defendant primarily used his reply brief to raise two brand new claims: (1) that his attorney was ineffective for failing to object to the use of his prior convictions for attempted kidnaping and aggravated battery as a combined "crime of violence" under U.S.S.G. § 2K2.1, *see id.* 6-9, and (2) that his attorney was ineffective for failing to object to the consideration of the misdemeanor DWI conviction in PSR ¶ 41 on the basis that he was uncounseled in that case. *See id.* 9-11. In addition to recommending that these belated claims be denied as foreclosed by the waiver of collateral attack, I also recommend they be denied for two separate and alternative reasons.

First, in the Tenth Circuit, "arguments raised for the first time in a reply brief are generally deemed waived." *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) (citation omitted). In *Stump v. Gates*, the Court explained the basis for this "rule of waiver":

> This court does not ordinarily review issues raised for the first time in a reply brief. The reasons are obvious. It robs the appellee of the opportunity to demonstrate that the record does not support an appellant's factual assertions and to present an analysis of the pertinent legal precedent that may compel a contrary result. The rule also protects this court from publishing an erroneous opinion because we did not have the benefit of the appellee's response.

*Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000). The following year, in *United States v. Carpenter*, the Court applied this rule in a federal habeas petition, holding that where an argument was first propounded in a reply brief, "it is waived, notwithstanding the fact [it is filed by] a pro se petitioner." *United States v. Carpenter*, 24 F. App'x 899, 906 (10th Cir. 2001) (unpublished) (citations omitted). The Court ratified the application of the waiver rule in habeas proceedings as recently as 2011, when it again held that a reply brief "is not a proper vehicle to raise a new issue." *United States v. Moya-Breton*, 439 F. App'x 711, 715 (10th Cir. 2011).

Furthermore, district courts within the circuit have recognized the rule of waiver in habeas proceedings and applied it. *See, e.g., United States v. Myers*, No. 12-CR-0196-02-CVE, 2016 WL 4479489, at *6–7 (N.D. Okla. Aug. 24, 2016) (unpublished) ("[T]he general rule is that arguments raised for the first time in a reply to a § 2255 motion are waived.") (citation omitted); *Rios-Madrigal v. United States*, No. 2:05-CR-691, 2010 WL 918087, at *3 (D. Utah Mar. 9, 2010) (unpublished) ("Because this argument was raised for the first time in [the petitioner's] reply brief, the argument is waived.") (citation omitted); *La Flora v. United States*, No. 03-10230-01-WEB, 2007 WL 1347694, at *1 (D. Kan. May 8, 2007) (unpublished) ("The defendant's argument raised for the first time in a reply brief is waived.") (citations omitted).

There is a second independent reason why the Court should deny the new claims that

Defendant has waited until his reply brief to bring for the first time: they do not relate at all to the specific claims brought in his original motion. Instead, they operate as the equivalent of a new § 2255 motion. While they are couched as further examples of his counsel's alleged ineffective assistance, these new claims are founded on separate and discrete arguments. The problem that Defendant has in trying to transplant these new arguments onto those in his initial motion, however, is that these new claims are inexcusably late. Title 28, United States Code, Section 2255(f) provides a defendant with a one-year period in which to file his motion. Although this sub-section enumerates four events that could trigger the one-year clock, the operative one here is found in § 2255(f)(1), specifically "the date on which the conviction becomes final[.]" Because the claims that Defendant has now raised in his reply brief arise from the same set of PSRs and the same sentencing hearing that gave birth to his original claims, he cannot assert that he is entitled to any of the later dates set forth in §§ 2255(f)(2)-(4). As the Court entered its Judgment on September 24, 2015, Cr. Doc. 55, Defendant had until September 24, 2016 in which to bring *all* of his claims. Yet he did not file his reply brief until April 13, 2017, which came nearly seven months too late.

Consequently, for the foregoing reasons, the Court should deny the two additional claims in Defendant's reply brief because they were raised for the first time in a reply brief and because they were inexcusably late. Furthermore, the Court should consider Defendant – by not addressing the point at all – to have conceded the Government's argument that all of his claims are barred by the collateral attack waiver in his plea agreement.

### V.  Legal Standard Governing Waivers of Collateral Challenges

A "waiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were

knowingly and voluntarily made." *United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001). However, "the constraints which apply to a waiver of the right to direct appeal also apply to a waiver of collateral attack rights." *Id.* In other words, "[a] plea agreement waiver of post-conviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel *challenging the validity of the plea or the waiver*." *Id.* at 1187 (emphasis added). But collateral attacks based on ineffective assistance of counsel claims that challenge anything else – including counsel's performance leading up to and at sentencing – are waivable. *Id.* at 1187-88.

Therefore, in reviewing whether to enforce the waiver of appellate or collateral attack rights, the court must determine: (1) whether the disputed collateral attack falls within the scope of the waiver of collateral attack rights; (2) whether the defendant knowingly and voluntarily pleaded guilty and waived his collateral attack rights; and (3) whether enforcing the waiver would result in a miscarriage of justice. *See United States v. Hahn*, 359 F.3d 1315, 1325-1327 (10th Cir. 2004).

When addressing the first prong of the analysis and determining a waiver's scope, a court must "strictly construe [the waiver] and any ambiguities in these agreements will be read against the Government and in favor of a defendant's appellate [and collateral attack] rights." *Id.* at 1325. On the second prong, the defendant bears the burden of presenting evidence that he did not knowingly and voluntarily enter into the plea agreement or understand the waiver of collateral attack rights. *Id.* at 1329 (citing *United States v. Edgar*, 348 F.3d 867, 872-73 (10th Cir. 2003)). And on the third and final prong, a court will enforce the waiver unless it finds that doing so would constitute a miscarriage of justice. *Id.* at 1327. The Tenth Circuit has specified that such a miscarriage of justice can occur only in four discrete situations:

1. Where the district relied on an impermissible factor such as race;

2. Where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid;

3. Where the sentence exceeds the statutory maximum; or

4. Where the waiver is otherwise unlawful.

*Id.* (citations omitted). As for the fourth of these situations – whether the waiver is otherwise unlawful – the Tenth Circuit requires the defendant to bear the burden of demonstrating that "'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[,]' as that test was employed in *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993))." *Id.* (brackets in original); *accord United States v. Gonzalez-Huerta*, 403 F.3d 727, 737 (10th Cir. 2005).

## VI. Analysis

Applying the foregoing legal standards to the instant waiver, I recommend that the Court find that each of the claims that Defendant has brought in his § 2255 motion fall within the scope of the collateral attack waiver in his plea agreement. I further recommend that the Court find that Defendant has not carried his burden of demonstrating that his guilty plea or the instant waiver was either involuntary or unknowing. Finally, I recommend that the Court find that Defendant has not carried his burden of demonstrating that enforcing the waiver will result in a miscarriage of justice.

### A. Defendant's Claims Are within Scope of Waiver

The collateral attack waiver in Defendant's plea agreement read as follows:

In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any other extraordinary writ, except on the issue of counsel's ineffective assistance *in negotiating or entering this plea or this waiver.*

Plea Agrm't, Cr. Doc. 47, ¶ 13 (emphasis added). As written, this waiver comports with the exceptions set out by the Tenth Circuit in *Cockerham* and *Hahn*. In other words, by agreeing to this waiver, Defendant gave up his legal right to collaterally attack every instance of ineffective assistance of counsel *except for* those that relate to his counsel's assistance in the narrow context of negotiating or entering the Defendant's guilty plea or the waiver itself.

Because Defendant is *pro se*, I consider his claims liberally but I am forbidden from substituting myself as his attorney or making claims for him which he has not made for himself. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*); *see also United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[W]e must construe a [pro se litigant's] arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate."). Liberally construed, his motion asserts the following claims:

1. His counsel was ineffective for failing to investigate the facts and law regarding Defendant's prior convictions and whether he was a career offender. *See* Mot. 4.

2. His counsel was ineffective for refusing to honor Defendant's request to object to ¶ 41 of the PSR because it miscalculated the sentence he served for the DWI conviction referenced therein, resulting in the imposition of three criminal history points instead of two and a criminal history category of VI instead of V. *See id.* 5.

3. His counsel was ineffective for refusing to honor Defendant's request to object to the four-level upward adjustment for possessing a firearm in connection with another felony offense. *See id.* 6-7. Defendant asserts that he should not have been subject to that enhancement because (a) he was never "bound over" to state district court on this charge, (b) the case was dismissed

for lack of prosecution by the Metropolitan Court, and (c) the Government cannot prove the substance in the four baggies located near the firearm in the car he was driving when arrested in June 2013 was methamphetamine. *See id.* 6-7, 17.

4. His counsel was ineffective for refusing to honor Defendant's request to object to the two-level upward adjustment for possessing a stolen firearm. *See id.* 8. Defendant contends that this enhancement was improper because the only firearm that was stolen was the one identified in Count 2, a count that was dismissed pursuant to the plea agreement. *Id.* Defendant asserts that he cannot be punished for conduct associated with a charge of which he was not convicted. *Id.*[9]

All of these claims relate to the application of the Sentencing Guidelines to Defendant's case and his counsel's alleged failure to object thereto. As such, these claims are criticisms of his counsel's performance leading up to and at sentencing. None of his complaints, not even when liberally construed in the light most favorable to preserving his right to collaterally attack his sentence, addresses counsel's performance in negotiating the guilty plea itself or the waiver it included.

I reach the conclusion that Defendant's complaints are borne out of dissatisfaction with

---

[9] Defendant makes two other claims that require little effort for the Court to deny. Defendant alleges as to each of the four discrete claims in his opening motion that he did not appeal their outcome because his counsel did not advise him of the "ten-day rule to file a notice of appeal." *See* Mot. 5, 6, 8, 9, 16. I do not know specifically what Defendant is referring to in each of these assertions, but it is not necessary to inquire further. If Defendant is complaining that his attorney did not advise him of his right to appeal his *sentence* directly to the Tenth Circuit, that would not have been an error at all since Defendant knowingly and voluntarily gave up that right in his plea agreement. *See* Cr. Doc. 47, at ¶ 13; *see also* Cr. Doc. 66, at 8. And he was reminded by this Court at sentencing that he had waived his right to appeal. *See* Cr. Doc. 68, at 27. Or perhaps Defendant simply misunderstood the fill-in-the-blank form that he used for his opening motion. Regardless, the claims he raises in his motion are *designed* to be brought (unless waived) first in a § 2255 motion and, since they are still pending before this Court, they are not yet ripe for any appeal. *See, e.g.*, *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) ("Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed."). Defendant also makes a claim that his sentence violated the decision in *Alleyne v. United States*, __ U.S. __, 133 S.Ct. 2151 (2013). *See* Doc. 16 at 11-12. Because *Alleyne* dealt with the procedure for fact-finding associated with mandatory minimum sentences, and because the felon-in-possession statute at issue here featured no such sentence, this claim is irrelevant and does not merit further consideration.

his sentence, rather than his guilty plea, for two principal reasons. The first is the Tenth Circuit's decision in *Cockerham*. There, in spite of a plea agreement in which he waived his right to pursue *any* post-conviction or habeas corpus relief, Cockerham nonetheless filed a § 2255 motion alleging that his attorney had been ineffective for failing to object at sentencing to the absence of proof as to whether the methamphetamine in question was D-methamphetamine or L-methamphetamine. *Id.* at 1187. The Tenth Circuit held that the defendant had waived this claim because it challenged only his sentencing as opposed to the validity of his guilty plea or the waiver itself. *Id.* at 1188. That analysis is controlling here, as well. Just like Cockerham's, Defendant's criticism of his counsel can be boiled down to: "You should have objected to the application of these various guideline provisions to my sentence, either because they did not apply at all, or because they were erroneously applied, or because the Court did not have sufficient evidence before it to find that they applied." These are sentencing stage claims, not change-of-plea stage claims, and they should meet with the same fate as did Cockerham's.

I also derive significant support for my analysis and conclusion from the language of the plea agreement itself. The only relevant reference to the U.S. Sentencing Guidelines in the plea agreement was a routine stipulation to acceptance of responsibility under § 3E1.1. Plea Agrm't, Cr. Doc. 47, ¶ 8a. There were no other stipulations to how or whether other guideline provisions would apply, including any of the ones that Defendant now invokes in his motion. Instead, the parties specifically "reserve[d] their rights to assert any position or argument with respect to the sentence to be imposed, including but not limited to the *applicability of particular sentencing guidelines, adjustments under the guidelines, departures or variances from the guidelines*, and the application of factors in 18 U.S.C. § 3553(a)." *Id.*, ¶ 8d (emphasis added). Accordingly, it is patently clear that, apart from the Government's promise to recommend 96 months and the

parties' stipulation to acceptance of responsibility, the parties specifically left open to later litigation every other sentencing issue that could apply to a guilty plea to Count 1 of the superseding indictment. Because each of Defendant's claims relates to the application of a guidelines provision that was implicitly yet specifically left open in the plea agreement, none of the claims can fairly be read as attacking defense counsel's performance in negotiating the guilty plea or the waiver.[10]

Defendant's own words at the change-of-plea hearing make it further clear that his complaints about his lawyer arose only later and in association with his sentencing hearing. After all, under oath and in response to Chief Magistrate Judge Molzen's question, Defendant swore that – at least at the time of the plea hearing – he was satisfied with his counsel's advice and representation. *See* Cr. Doc. 66, at 12. He attested to the same satisfaction in his written plea agreement. *See* Cr. Doc. 47 at 10.

For all of these reasons, I recommend that the Court find and conclude that Defendant waived each of the foregoing claims because none of them relate to his counsel's alleged ineffective assistance in negotiating or entering the guilty plea or the waiver itself.

### B. No Showing that Defendant's Guilty Plea or Waiver Was Involuntary

The defendant bears the burden of presenting evidence that he did not knowingly and voluntarily pled guilty or understand the waiver of collateral attack rights. *Hahn*, 359 F.3d at 1329 (citing *United States v. Edgar*, 348 F.3d 867, 872-73 (10th Cir. 2003)). Defendant has made no such showing here.

The three documents filed by Defendant in relation to his § 2255 motion comprise a total

---

[10] Significantly, Defendant has never alleged anywhere in his briefing that, but for counsel's alleged errors, he would not have entered this plea agreement. To repeat, his dissatisfaction with his attorney's performance has nothing to do with the negotiation of the plea agreement or the waiver, but everything to do with how his counsel represented him *after* the entry of the plea and leading up to and at the sentencing hearing.

of 58 pages. In all of those pages, the only reference that Defendant made to anything approaching the voluntariness of his plea is found in his "Memorandum of Law in Support of Movant's Previously Filed 2255 Motion:"

> A plea cannot be considered voluntary without adequate notice of the nature of the charges against him. As the court has repeatedly explained[,] it is the constitutional duty of the District Court to ensure that the plea is knowing, voluntary, and intelligent.

Doc. 2 at 9 (citations omitted). Defendant then wrote: "The defendant's burden is to show a reasonable probability that he would not have entered a plea had he been properly advised." *Id.* at 10.

But Defendant says nothing more. Most especially, he does not assert – anywhere, even in his reply brief – that his plea was involuntary. He does not assert – anywhere, even in his reply brief – that he would not have pleaded guilty and would have insisted on going to trial, but for his counsel's alleged shortcomings.[11] He does not assert – anywhere, even in his reply brief – that he would not have entered into the plea agreement but for his counsel's allegedly deficient performance. Furthermore, in the excerpted paragraph above, he referenced only the requirement that a defendant receive "adequate notice of the nature of the charges against him." Doc. 2 at 9. Defendant certainly cannot complain about *that* on the record of this case. He was arraigned on both the original and superseding indictments, during which he was advised of the charges and the maximum penalties. *See* Cr. Docs. 9, 22 (clerk's minutes of arraignments). His plea agreement plainly set forth the charge to which he was pleading guilty and the maximum

---

[11] I am not surprised that Defendant has not made such a claim. After all, from the facts set forth in the various PSRs, it appears that Defendant had no reasonable defense to the charges. *See, e.g.,* PSR ¶¶ 13-14, 17-18. One firearm was found in the console of the vehicle he was driving and he admitted to possessing it. The other firearm was found on his hip when he was arrested. Given his two years of college credits, noteworthy intellect, and long seasoning in the criminal justice system, Defendant no doubt knew that his best approach in this case would be to plead guilty, offer evidence in mitigation, and ask the Court for leniency. Which is precisely, with his counsel's advice, what he did. Even now, the only relief that Defendant is seeking is to be *re-sentenced*, not permitted to withdraw his guilty plea and go to trial.

penalties. *See* Cr. Doc. 47, ¶¶ 3-4. At his change of plea hearing, Defendant was re-advised of the charge against him and the maximum penalties. *See* Cr. Doc. 66 at 4-5. There can be no question that, prior to pleading guilty, Defendant knew the charges against him and the maximum penalties they carried.

It is worth emphasizing that this case was not Defendant's maiden voyage in the criminal justice system. To the contrary, his PSR demonstrates that he has had at least *thirteen* cases in the criminal justice system, nine of which resulted in conviction, the earliest dating back some 20 years. *See* PSR ¶¶ 38-54. Furthermore, Defendant is intelligent and was enrolled in college courses at CNM at the time of his arrest, points made by his attorney at sentencing. *See* Cr. Doc. 68 at 12-13.[12] This combination of experience in the criminal justice system and his native intelligence enabled him to understand better than most the crime he committed and the consequences in federal court for having done so. *See id.* at 11 (Defendant advising the Court that he is "well aware of the consequences of the federal court systems and its sentencing guidelines.").

It is also worth emphasizing that, by the time he addressed the Court at his sentencing hearing, Defendant had been on notice for *more than nine months* – since the disclosure of the Form 13 PSR – that the Probation Office was recommending the combined six-level upward adjustment for possessing a stolen firearm and possessing a firearm in connection with another felony. When he pleaded guilty, Defendant swore to Chief Magistrate Judge Molzen that there were no other promises or inducements made to him other than those contained in the written plea agreement, and that he and his attorney had discussed (no doubt with the benefit of the Form 13 PSR) the relevant sentencing guideline provisions. As he prepared to speak at his own

---

[12] Furthermore, at his plea hearing, Defendant advised Chief Magistrate Judge Molzen that he had two years of college credits. *See* Cr. Doc. 66 at 3.

sentencing hearing, Defendant further knew that the Probation Office had recommended the application of the same two upward adjustments in its first post-plea PSR in July and again five weeks later with the disclosure of the final version of the PSR. He was also aware that his lawyer had filed no objections to the PSR and that the sentencing memorandum filed on his behalf was silent on either of these adjustments. Finally, just seconds before he began to speak, Defendant heard his lawyer reaffirm that there were no objections to the PSR and merely echo the themes of the sentencing memorandum in arguing for a below-guideline sentence.

Defendant now claims that he had been telling his lawyer all along to object on the grounds that he himself had identified. *See, e.g.*, Mot. 5, 6, 8. He claims his lawyer had promised him that he would file a motion to make those objections. *See id.*, 16-17. He further claims that – at the sentencing hearing – his lawyer told him that he hadn't had the time to file the motion. *See id.*, 18. If the claims that Defendant now makes in his § 2255 motion are true, however, one would think that Defendant would have said something quite different during his sentencing allocution. One might expect that Defendant would have said something along the lines of: "Your Honor, my lawyer and I have discussed whether my sentence should be increased because of these disputed guideline provisions. I don't think they apply to me and he promised to object to them. I don't understand why he hasn't done so." But Defendant did not say those words or anything close to them. Instead, he told the Court that he was "well aware of the consequences of the federal court systems *and its sentencing guidelines*." *Id.* 11 (emphasis added). He went on to say: "And now that I'm aware – *clearly aware* – of the sentencing guidelines, I can say that in the future I will not possess a firearm or ammunition." *Id.* (emphasis added). He concluded by asking the Court to sentence him to "the lowest term of imprisonment possible." *Id.*, 12.

At no point did Defendant mention any of the upward adjustments or criminal history increases that he now claims to have debated with his lawyer in the lead-up to sentencing. This is further evidence pointing strongly to the conclusion that Defendant entered into a plea agreement that included a waiver of collateral attack rights, and then subsequently pleaded guilty pursuant to that agreement, in a knowing and voluntary fashion. His complaints arose only *after* his guilty plea.

For these reasons, I recommend that the Court find and conclude that Defendant did not carry his burden of demonstrating that his guilty plea or the waiver of collateral attack rights was unknowing or involuntary.

### C. Enforcing the Waiver Will Not Result in Miscarriage of Justice

As set forth *supra* at 10, *Hahn* enumerated four situations in which enforcing an appellate or collateral attack waiver would constitute a miscarriage of justice. Analyzing them individually for any applicability to this case, I can quickly rule out that this Court relied on any impermissible factor, such as race, in determining Defendant's sentence. Indeed, Defendant makes no such claim. Next, at no point in his briefing has Defendant ever criticized his counsel for negotiating the *waiver* that the Government is now seeking to enforce. Third, the 92-month sentence that Defendant received is well below the 120-month statutory maximum permitted by 18 U.S.C. § 924(a)(2).

That leaves us with the fourth and final situation identified by the Tenth Circuit: whether the waiver is otherwise unlawful. For numerous reasons, I recommend that the Court conclude that there is no reasonable set of circumstances under which Defendant's 92-month sentence could be viewed as "seriously affecting the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993). First is the direction and

guidance from *Hahn* itself, which held that "[s]ubjecting [a defendant] to a sentence sanctioned by Congress does not constitute an error seriously affecting the fairness, integrity, or public reputation of judicial proceedings." 359 F.3d at 1329. This result is even more applicable here because, in *Hahn*, the Tenth Circuit found that a consecutive sentence of 24 *years* on top of another 40-year sentence was not a miscarriage of justice. *Id.* Here, in contrast, the differences between the sentence that Defendant received (92 months), the one he might have received if his criminal history category had appropriately been calculated at V instead of VI (84 months), and the one he argued in his opening motion he should have been entitled to (46-57 months, *see* Def.'s § 2255 Mot., Doc. 1, at 12) are substantially smaller by comparison.

Second, Defendant's complaints that his attorney should have objected to the use of any of his prior convictions as crimes of violence under U.S.S.G. § 2K2.1(a)(4)(A) suffer from a sequencing flaw. Defendant claims that the Supreme Court's *Johnson* decision should have impelled his lawyer to object. *See* Def.'s Rply., 6-9. But that is a complaint about counsel's performance at the *sentencing* stage, not the plea negotiation stage. After all, *Johnson* was not issued until June 26, 2015, some 36 days *after* Defendant pleaded guilty. His counsel certainly cannot be faulted for not having read the Supreme Court majority's mind even before it made it up. Furthermore, counsel had no reason to delve deeply into the facts and circumstances of Defendant's prior felony convictions because – at least up to the point at which the *Johnson* decision was issued – the residual clause in § 2K2.1(a)(4)(A) was still alive and clearly encompassed at least two of his prior felony convictions. *See* Original PSR ¶ 25.

Third, the only legitimate error Defendant complains of was the over-weighting of his prior DWI conviction described in ¶ 41 of the PSR. The Government concedes that the PSR erroneously attributed 3 criminal history points to this conviction when it deserved only 2. *See*

Gov't Rsp., Doc 13, at 6.  The Government further concedes that this single point should have bumped Defendant down into Criminal History Category V instead of VI.  *Id.*  Nonetheless, this error need not be corrected because it comes nowhere close to the kind of error that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *Olano*, 507 U.S. at 732.  After all, this error would have resulted in an advisory range of 84-105 months, instead of 92-115 months.  The sentence that Defendant received – 92 months – is still on the lower end of what should have been the correct advisory range.  This sentencing disparity is virtually infinitesimal compared to the one at issue in *Hahn*.  *See also United States v. Madrid*, 805 F.3d 1204, 1212 (10th Cir. 2015) (requiring for a sentencing guidelines error to "seriously affect the fairness, integrity, or public reputation of judicial proceedings" that "correct application of the sentencing laws would likely *significantly* reduce the length of the sentence") (emphasis added), *abrogated on other grounds by Beckles v. United States*, 137 S.Ct. 886 (2017).

Fourth, if put to an evidentiary hearing, the Court would have had little trouble finding by a preponderance of the evidence that Defendant possessed the firearm in June 2013 in connection with the methamphetamine possession or distribution evidence found in the same console.  *See* PSR ¶ 27.  Although Defendant complains that the suspected methamphetamine was not sent to a crime lab for confirmatory testing, that level of scientific certainty is not required.  A presumptive positive field test, combined with officer testimony about the appearance, characteristics, and packaging of the substance, would have been more than sufficient to sustain a finding that requires only a preponderance of the evidence to make.  And whether the charge was ever "bound over" to a state district court is immaterial, as it is black-letter law that methamphetamine possession, not to mention distribution, is a felony crime under New Mexico statute.  *See* N.M.S.A. §§ 30-31-20A(2)(C) (making distribution of methamphetamine a second-

degree felony) and 30-31-23D (making simple possession of methamphetamine a fourth-degree felony).

Fifth, even in the face of a proper objection, the Court would still have imposed the two-level upward adjustment under U.S.S.G. § 2K2.1(b)(4) for possessing a stolen firearm, even though this firearm was charged in a count of the superseding indictment to which Defendant did not plead guilty. *See* PSR ¶ 26. After all, a court may consider in arriving at its sentence conduct that was never charged, or even acquitted conduct, not to mention crimes dismissed via a plea bargain. What is more, by its plain language, § 2K2.1(b)(4) is not restricted in scope to the narrow facts of the offense to which Defendant pleaded guilty. Instead, it requires the two-level increase "[i]f *any* firearm was stolen[.]" U.S.S.G. § 2K2.1(b)(4). This language necessarily implies that this guideline takes a broad view of firearms offenses and the relevant conduct for which a defendant can be held responsible. Furthermore, because the Sentencing Guidelines are merely advisory, the Court could always have considered under 18 U.S.C. § 3553(a) relevant information that was not specifically countenanced by the Guidelines.

For all of these reasons, I recommend that the Court find and conclude that enforcing the waiver in this case will not constitute a miscarriage of justice because Defendant has not proven that his counsel's ineffectiveness led to sentencing error that "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Hahn*, 359 F.3d at 1329.

## VII. Conclusion

Each of the claims in Petitioner's Motion falls within the scope of his waiver of collateral attack rights in his plea agreement. Furthermore, Defendant has not met his burden of showing that his guilty plea or the waiver of collateral attack rights was involuntary or unknowing. In addition, it is clear that enforcing the waiver and dismissing the instant motion will not constitute

a miscarriage of justice under governing law. Finally, Defendant should be deemed to have conceded the applicability of the collateral attack waiver when it was clearly invoked by the Government in its response brief and Defendant did not address it at all in his reply brief. I recommend that the Court enforce the waiver.

For the foregoing reasons, I recommend that Defendant's Motion be **DENIED** and this case **DISMISSED WITH PREJUDICE.**

**IT IS SO RECOMMENDED**.

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**